Troutman Sanders LLP
875 Third Avenue
New York, New York 10022



troutman.com

**Bennet J. Moskowitz**
bennet.moskowitz@troutman.com

April 23, 2020

**BY ECF AND EMAIL**

Hon. Debra C. Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Priscilla Doe v. Darren K. Indyke and Richard D. Kahn as Joint Personal Representatives of The Estate of Jeffrey E. Epstein, et al.*, 1:19-cv-07772 (ALC) (DCF)

Dear Judge Freeman:

We represent Defendants in the above-referenced action ("Defendants"). We write in response to Plaintiff Priscilla Doe's ("Plaintiff") procedurally improper and substantively baseless "Rule 34 Motion for Entry Upon Land" (ECF No. 55) (the "Motion").[1] The Court should readily deny Plaintiff's motion for two separate reasons.

First, Plaintiff's motion flagrantly violates Your Honor's Individual Practices, the Local Rules and the Federal Rules. Among other things, Plaintiff never even attempted to meet and confer with Defendants before filing her motion. This is not the first time Plaintiff's counsel has done something like this.[2]

Second, Plaintiff—who claims she did not meet Mr. Epstein until she was an adult (ECF No. 1 at ¶ 51)—has not even remotely demonstrated a sufficient connection between her claims

---

[1] Although Plaintiff submitted a full motion, as that was procedurally inappropriate, Defendants submit this letter brief in accordance with Your Honor's Individual Practices, which, as described below, Plaintiff violated. Should the Court accept Plaintiff's motion notwithstanding her numerous procedural violations, Defendants respectfully request the opportunity to submit a formal response to the motion.

[2] In *Katlyn Doe v. Darren K. Indyke and Richard D. Kahn as joint personal representatives of the Estate of Jeffrey E. Epstein, et al.*, 1:19-cv-07771 (PKC) (DCF), Plaintiff, without first obtaining leave, filed a 52-page brief in opposition to the defendants' motion to dismiss, thereby grossly exceeding the 25-page limit set forth in Judge Castel's Individual Practices. Separately, in each of their five actions against Defendants, counsel for Plaintiff has served discovery requests that violate Local Rule 26.3 in several respects. They also served far more interrogatories than permitted under FRCP 33(a)(1). Moreover, just recently, counsel for Plaintiff failed to serve subpoenas on Defendants in accordance with FRCP 45(a)(4) requiring notice on other parties before the service of subpoenas commanding the production of documents. Plaintiff sent Defendants copies of the subpoenas five days after purporting to serve them on the subpoenaed parties.



that she was "made to engage in commercial sex acts" with him (*id.* at ¶ 115) and the physical aspects of the places where Plaintiff was allegedly abused. Therefore, the requested inspections—which would require significant attorneys' fees and pose various logistical issues even absent a pandemic—are entirely unnecessary.

I. **Facts: Plaintiff never met and conferred with Defendants before filing a formal motion seeking two unnecessary and in any event costly, burdensome inspections.**

Plaintiff's motion is entirely inappropriate. On March 13, 2020, three days after she served Defendants with discovery requests improperly seeking judgment discovery such as "[a] complete copy of the every [*sic*] unredacted Last Will and Testament of Jeffrey E. Epstein created between 2000 and present" and "[a]ll Trust documents created by Jeffrey Epstein between 2000 and present,"[3] Plaintiff served Defendants with a demand to "photograph and video each of the eight or so floors" of Mr. Epstein's townhouse located at 9 East 71st Street, New York, New York, and, further, to "take … video and photographs inside various structures and surrounding areas" at Mr. Epstein's real property located on an island in the U.S. Virgin Islands (ECF No. 55-2). Plaintiff demanded the inspections occur on April 15—*i.e.*, two days after Defendants' responses to the inspection requests were even due pursuant to Fed. R. Civ. P. R. 34(b)(2)(a) and during the current COVID-19 pandemic and National Emergency and lockdowns in the jurisdictions where the subject property is located. (*Id.*)

On April 13, 2020, Defendants timely responded to Plaintiff's demand for inspections, stating the requests were overly broad, would be unduly burdensome to carry out, would require significant expense, were not proportional to the needs of the case, and would fail to yield any information that Plaintiff needs to prosecute her claims (ECF Doc. 55-1). Defendants, who are understandably concerned Plaintiff is attempting to improperly seek judgement discovery by taking a de facto video and picture inventory of the entire contents of Mr. Epstein's residences, further objected to any photography or videography that would reveal confidential information and information outside the scope of discovery. (*Id.*) Defendants further advised Plaintiff that, in any event, the requested inspections were nonviable in light of the current pandemic: "The coronavirus pandemic is a National Emergency in the United States. States of Emergency have been declared in both New York and the U.S. Virgin Islands, with 'stay-at-home' Executive Orders for non-essential workers in both jurisdictions." (*Id.*)

Regrettably, on April 20, 2020, Plaintiff, without even attempting to first meet and confer with Defendants, filed her Motion to compel these overbroad, unnecessary and, currently unfeasible inspections, solely on the basis of having received Defendants' April 13 response. Plaintiff's counsel never picked up the phone or even emailed Defendants' counsel to discuss Defendants' positions.

II. **Plaintiff's Motion Violates Your Honor's Individual Practices, the Local Rules of the Southern District of New York, and the Federal Rules of Civil Procedure.**

Plaintiff violated three sets of rules by filing her Motion. Your Honors' Individual Practices § II(A) requires compliance with Local Rule 37.2 and Your Honor's procedures for letter

---

[3] A copy of Plaintiff's "First Request for Production to Defendant, The Estate of Jeffrey E. Epstein" is submitted herewith as **Exhibit A**.

Hon. Debra C. Freeman
April 23, 2020
Page 3



submissions set forth in Individual Practice § I(C). Plaintiff failed to comply with both requirements.

Local Rule 37.2 further provides: "No motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the Court by letter-motion for a pre-motion discovery conference (subject to the instructions regarding ECF published on the Court's website and the Judge's Individual Practices) and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference." Here, Plaintiff neither requested a conference nor submitted a letter motion.

Plaintiff also failed to satisfy Your Honor's unequivocal requirements that any application seeking the Court's resolution of a discovery dispute be accompanied by "a statement that the moving party has conferred (or made substantial efforts to confer) in good faith with its adversary, in an informal attempt to resolve, or at least narrow, the dispute" and that "at a minimum, the moving party will have called its adversary and made efforts to engage in a meaningful dialogue, in an attempt to resolve any discovery issues." (Individual Practices § I(C).) Your Honor further warns that the Court "will not consider any discovery dispute where the moving party has not satisfied the good-faith conference requirement." (*Id.*)

Here, Plaintiff failed to attempt to confer in good faith with Defendants about this matter before filing her Motion. She provides no certification that she did otherwise.

Plaintiff has also ignored her obligations under Fed. R. Civ. P. 37(a)(1), which requires parties moving for an order compelling discovery to include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the disclosure or discovery in an effort to obtain it without court action." Plaintiff's Motion fails to include such a certification for one obvious reason: she never attempted to confer with Defendants on this issue before resorting to motion practice.

Plaintiff's rush to engage in motion practice is especially inappropriate given that, by her own admission, no inspections could possibly take place until lockdown orders are lifted in the jurisdictions where the subject property is located.

**III.    Plaintiff fails to provide a valid justification for the requested inspections.**

The Court should also deny Plaintiff's Motion on the merits. "Most cases involving on-site inspections concern a given object on the premises which is the subject matter of the action, as, for example, a particular machine in a personal injury or patent infringement case." *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978). Accordingly, "[a]bsent a showing of relevance, courts have repeatedly denied requests to inspect property pursuant to Fed. R. Civ. P. 34." *Ehrlich v. Inc. Vill. of Sea Cliff*, No. CV 04-4025 (LDW) (AKT), 2007 U.S. Dist. LEXIS 39824, at *18-20 (E.D.N.Y. May 31, 2007) ("Plaintiffs' demonstration of 'relevance' as reflected in their letter motion is not compelling. Any relevance of the desired inspection to the substance and merits of the claims as stated in this case is marginal at best. From my review of the claims themselves and the arguments of counsel, I find this request to be far afield from the crux of this case.") (citing *Belcher*, 588 F.2d at 908; *Macort v. Goodwill Indus.-Manasota, Inc.*, 220 F.R.D. 377, 379 (M.D. Fla. 2003) (denying plaintiffs' motion to conduct an unlimited Rule 34 inspection in ADA case and limiting inspection to those specific barriers of access enumerated in the



complaint); *Schwab v. Wyndham Int'l, Inc.*, 225 F.R.D. 538 (N.D. Tex. 2005) (denying a Rule 34 motion to compel entry upon premises because "plaintiff has not articulated, much less proved, a need for inspecting and photographing the premises" and because "general and conclusory assertions do not justify unrestricted access to Wyndham's corporate headquarters"); and *Teer v. Law Eng'g & Envtl. Servs.*, 176 F.R.D. 206 (E.D.N.C. 1997) (denying Rule 34 motion to compel entry, finding "whether to permit entry upon land involves a balancing of degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.")).

Where, as here, a plaintiff alleging torts does not set forth allegations in her complaint (as opposed to statements by her counsel) that the physical aspects or features of a defendant's real property contributed to her claims, an inspection of those properties is unnecessary. *See, e.g.*, *EEOC v. United States Bakery*, Civil No. 03-64-HA, 2004 U.S. Dist. LEXIS 11350, *10-11, 2004 WL 1307915 (D. Or. Feb. 4, 2004) ("The only issue in this case is whether defendant subjected plaintiffs to sexual harassment and/or retaliation. The inspection of the premises is not relevant to plaintiffs' sexual harassment claims and plaintiffs' allegations do not assert that the physical aspects or features of defendant's facilities contributed to the alleged harassment. Thus, neither the overall conditions under which the plaintiff intervenors worked nor the physical layout of defendant's premises is at issue in this case.").

Here, Plaintiff does not—and cannot—show how an inspection of Mr. Epstein's properties will yield information she needs to pursue her claims. In her Complaint, Plaintiff alleges that, starting in 2006 when Plaintiff was 20 years old and until 2012, Mr. Epstein forced Plaintiff to perform "commercial sex acts" and sometimes engage in "sexual activity" with others. (Compl. ¶¶ 51, 74, 88, 115.) Plaintiff further alleges Mr. Epstein forced Plaintiff to move into an apartment Mr. Epstein owned and attend massage school at his expense. (*Id.* ¶¶ 94, 110.)

Nowhere in her Complaint does Plaintiff set forth any allegations demonstrating the need to now inspect Mr. Epstein's properties eight years after the alleged abuse ended. Nor does Plaintiff allege she was abused throughout the entirety of the properties she now purports to need to measure, videotape and photograph in their entirety. The relationship between Plaintiff's claims and the two properties she demands to inspect have an even weaker connection than the ones deemed too marginal to justify inspections in the cases cited above.

Though far from clear, Plaintiff appears to offer three unconvincing justifications for the inspections. First, she argues she needs "to understand the location of her abuse as the Defendants and their counsel" in order to be "on equal footing" with Defendants' counsel. (ECF No. 55 at 3.) However, Plaintiff's claims have nothing to do with the details of the locations of the alleged abuse.

In fact, this very argument was rejected under similar circumstances in *U.S. Bakery*, 2004 U.S. Dist. LEXIS 11350, *10-11. In *U.S. Bakery*—a sexual harassment suit brought by the EEOC—the EEOC argued that it needed to inspect defendant's premises "to assist plaintiffs' attorneys and expert in gaining a better understanding of plaintiff intervenors' work conditions, allow the expert to observe the specific areas of defendant's premises where the alleged harassment occurred, and that a videographer is necessary to create a visual record that will assist the trier of fact." *Id.* The District Court denied the request because it was not relevant to

Hon. Debra C. Freeman
April 23, 2020
Page 5



plaintiff's claims, holding:

> The only issue in this case is whether defendant subjected plaintiffs to sexual harassment and/or retaliation. The inspection of the premises is not relevant to plaintiffs' sexual harassment claims and ***plaintiffs' allegations do not assert that the physical aspects or features of defendant's facilities contributed to the alleged harassment. Thus, neither the overall conditions under which the plaintiff intervenors worked nor the physical layout of defendant's premises is at issue in this case***. … The EEOC has plenary and unrestricted access to the plaintiff intervenors who are able to describe their working conditions to the EEOC, its attorneys and the expert. They can describe the physical proximity of the floor employees to one another and the level of employee interaction without burdening the defendant. Therefore, a physical inspection of the premises in this case is unwarranted.

*Id.* (internal citations omitted, emphasis added).

Here, as in *U.S. Bakery*, there is no allegation in the Complaint that the physical features of Mr. Epstein's properties contributed to the alleged abuse. Thus, as in *U.S. Bakery*, the physical layout of those properties is not at issue in this case.

Further, any information Plaintiff's counsel may need, it can get from Plaintiff, herself. Plaintiff alleges years of "regular" visits to Mr. Epstein's New York property and claims she "spent considerable time with [him]." (Compl. ¶¶ 60, 88, 94). As for the property in the USVI, she alleges she visited it "on more than twenty occasions." (*Id.* ¶ 96.)

Plaintiff's second argument is that she needs to be able to oppose anticipated arguments that "she was somehow 'free' to leave [Mr. Epstein's] premises at any time." (ECF No. 55 at 3.) But Plaintiff makes no allegations that she was ever physically prevented from leaving Mr. Epstein's properties. In fact, Plaintiff repeatedly alleges that Mr. Epstein was able to continue his abuse by promising her things of value and because she felt intimidated by his wealth and power—not because of physical limitations or restrictions. For example, Plaintiff alleges:

- Mr. Epstein "informed Plaintiff that he had resources that he would use to advance Plaintiff's dance career if she would do what he wanted her to do." (Compl ¶ 59.)

- Mr. Epstein "always reminded Plaintiff that because of the money he was paying her for the commercial sex acts that he called 'massage,' she was able, for the first time, to pay for her mother's rent and for her own groceries." (*Id.* ¶ 61.)

- "Knowing that Jeffrey Epstein and his associates had confiscated her passport to prevent her from having the ability to leave the Island voluntarily, Plaintiff feared for her safety and felt forced into engaging in these sexual acts against her will." (*Id.* ¶ 75.)

- "It was clear by this trip that Jeffrey Epstein was extremely powerful and could cause serious harm to Plaintiff if she disobeyed." (*Id.* ¶ 76.)



- Mr. Epstein "constantly reminded Plaintiff that he was going to help cure Plaintiff's medical condition as a way to force Plaintiff to engage in commercial sex acts." (*Id.* ¶ 79.)

By contrast, Plaintiff never alleges Mr. Epstein was able to abuse her because of the physical traits of the locations where she met with him. She does not allege, for example, that she was physically trapped or locked in any location. Nor does she allege it was difficult to physically leave any room or building or that any person physically stopped her from leaving. Accordingly, the specific physical locations where she was abused are irrelevant to her claims.

Third, Plaintiff asserts she "believes that the layout of the various properties will demonstrate ways in which she was manipulated by [Mr. Epstein]" (ECF No. 55 p. 4.) In addition to being nonsensical on its face, this assertion does not justify Plaintiff's request to measure, videotape and photograph the properties on-site—floorplans of the locations at issue would show their layouts.

Even assuming Plaintiff needs information concerning the physical aspects of Mr. Epstein's properties—which, as established above, she does not—her failure to meet and confer with Defendants has deprived them of the ability to determine whether there are alternatives which would obviate the need for costly, burdensome inspections.[4]

\*\*\*

Because Plaintiff's motion disregards Your Honor's Individual Practices, the Southern District of New York's Local Rules and the Federal Rules of Civil Procedure, and because it is baseless, the Court should deny it with prejudice. In the alternative, Plaintiff should be ordered to meet and confer with Defendants to determine whether there are less costly and burdensome ways for her to obtain information that she can sufficiently demonstrate is necessary for her to pursue her claims (*e.g.*, floorplans).

Respectfully submitted,

/s/ Bennet J. Moskowitz
Bennet J. Moskowitz

---

[4] Plaintiff's assertions concerning the lack of burden of Defendants in accommodating the requested inspections are mistaken. The logistical issues posed by the inspections would require time-consuming, costly resources to address.