UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 1:19-cv-07772

PRISCILL DOE,

       Plaintiff,

vs.

DARREN K. INDYKE AND
RICHARD D. KAHN AS JOINT
PERSONAL REPRESENTATIVES OF
THE ESTATE OF JEFFREY E. EPSTEIN,
FINANCIAL TRUST COMPANY, INC.,
NES, LLC, HBRK ASSOCIATES, INC.,
JEGE, INC.,

       Defendants.

_____/

## PRISCILLA DOE'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COUNTS I-III OF FIRST AMENDED COMPLAINT

EDWARDS POTTINGER, LLC

*/s/ Bradley J. Edwards*
Bradley J. Edwards
Brittany N. Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
(954)-524-2820
Fax: (954)-524-2822
Email:  ecf@epllc.com
       brad@epllc.com
       brittany@epllc.com

(*PRO HAC VICE*)

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT. ........................................................................................... 1

II.  STATEMENT OF FACTS .............................................................................................. 2

III.  ARGUMENT .................................................................................................................. 4

   A.  Doe's Tort Claims Against Epstein (Counts I – III) Are Not Time-Barred.................... 5

     1.  The Indictment Was Not Restricted to Minors............................................................ 6

     2.  Plaintiff's Claims Concern the Same Sex Trafficking Operation that the Indictment Concerned. ....................................................................................................... 7

     3.  Defendants' Attempts to Narrow the Scope of CPLR § 215 (8)(a) Fail. .................... 9

   B.  Plaintiff's Claims are Timely Pursuant to CPLR § 213-c .............................................. 11

   C.  Defendants Have Not Met Their Burden of Proving that Plaintiff Cannot Invoke Equitable Estoppel........................................................................................... 12

   D.  Defendants Have Not Met Their Burden of Proving that Plaintiff Cannot Invoke Equitable Tolling............................................................................................... 16

   E.  Doe Requests Leave to Amend to Correct any Deficiencies. ....................................... 19

IV.  CONCLUSION................................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................... 5

*Brown v. Parkchester South Condos.*, 287 F.3d 58, 60–61 (2d Cir. 2002) ................................. 18

*Camreta v. Greene*, 563 U.S. 692, 708, note 7 (2011); ...................................................... 6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ........................................... 5

*Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292, 315 (S.D.N.Y. 2014) ... 16, 18

*Christodoulou v. Terdeman*, 262 A.D.2d 595, 595 (2d Dept. 1999) .......................................... 9

*Clemons v. Nealson*, 202 A.D. 2d 747, 749 (3d Dept. 1994) ................................................... 5

*Daubert v. NRA Group, LLC*, 861 F. 3d 382, 395 (3d Cir. 2017) .............................................. 6

*Davis v. Jackson*, No. 15-cv-5359, 2016 WL 5720811, at *11 (S.D.N.Y. Sept. 30, 2016) ........ 17

*Flight Science, Inc. v. Cathay Pac. Airways Ltd.*,
   647 F. Supp. 2d 285, 289 (S.D.N.Y. 2009) .............................................................. 16, 17

*Funk v. Belneftekhim*, No. 14-CV-0376 (BMC), 2019 WL 3035124, at *2
   (E.D.N.Y. July 11, 2019) .................................................................................. 13

*Gallina v. Thatcher*, No. 2017-52980, 2018 N.Y. Misc. LEXIS 8435, at *3–4 (Sup. Ct. Oct. 23,
   2018), ............................................................................................................. 9

*Gen. Stencils, Inc. v. Chiappa*, 219 N.E.2d 169, 171 (N.Y. 1966) ........................................ 13

*Gotlin v. Lederman*, No. 05-CV-1899 (ILG), 2006 WL 1154817, at *13 (E.D.N.Y. Apr. 28,
   2006) ............................................................................................................... 16

*Gutierrez v. Mount Sinai Health Systems, Inc.*, 188 A.D.3d 418 (1st Dept. 2020) ..................... 12

*In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). ....................... 18

*Kashef v. BNP Paribas S.A.*, 925 F. 3d 53,58 (2d Cir. 2019) ............................................ 5, 7, 10

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) .............. 16

*Lisa Doe v. Indyke*, 465 F. Supp. 452 (S.D.N.Y. 2020) ...................................................... 6

*North Coast Outfitters, Ltd. v. Darling*, 134 A.D.3d 998, 999, 24 N.Y.S.3d 92, 94
   (N.Y. App. Div. 2015) ....................................................................................... 13

*Sabol v. Bayer Healthcare Pharm., Inc.*, 439 F.Supp.3d 131, 141 (S.D.N.Y. 2020) ................... 5

**Other Authorities**

18 U.S.C. § 3771(a) ............................................................................................. 4

N.Y Penal Law § 130.35 ...................................................................................... 11

N.Y. Penal Law § 130.50 ..................................................................................... 11

**Rules**

Fed. R. Civ. P. 15(2) ........................................................................................ 19

N.Y.C.P.L.R § 213-c ..................................................................................... 1, 11, 12

N.Y.C.P.L.R § 215(8)(a) ............................................................................... passim

Plaintiff, Priscilla Doe, hereby files this Memorandum in Opposition to Defendants' Motion to Dismiss Counts I-III (DE 89, hereinafter referred to as "MTD").

## I.     PRELIMINARY STATEMENT.

For decades, Jeffery Epstein and his co-conspirators recruited countless young women to visit his homes in New York, Florida, the United States Virgin Islands, and New Mexico to give Epstein massages that resulted in various degrees of sexual assault. This case involves the sex trafficking scheme perpetrated by Jeffrey Epstein and his associates, including various corporate entities that worked for or at the direction of Epstein.  Epstein and his associates recruited Plaintiff, Priscilla Doe, when she was a young woman to sexually traffic and abuse her as part of his sex=trafficking conspiracy.

The Co-Executors of Epstein's Estate argue that Counts I, II, and III of Doe's First Amended Complaint [DE 85] (hereinafter referred to as "FAC") are time-barred, but wholly ignore the burden they bear and have failed to meet. Defendants' statute of limitations objections disregard Doe's allegations of a long-running conspiracy as well as various statutory extensions of the application time for filing her claims.

First, Priscilla Doe's claims are timely pursuant to N.Y.C.P.L.R § 215(8)(a) (hereinafter "CPLR"), which provides that when a criminal action is commenced against the same defendant with respect to the event or occurrence that gives rise to a plaintiff's civil claim, the plaintiff has at least one year from the termination of the criminal action to file a civil action. Second, Priscilla Doe's claims are timely under N.Y.C.P.L.R § 213-c, which provides victims of rape and other delineated sex crimes with 20 years to bring a civil action against the perpetrator. Third, Defendants have failed to meet their burden of showing that Priscilla Doe will be unable to invoke

equitable estoppel and equitable tolling. This Court should deny Defendants' motion for partial dismissal.

## II.   STATEMENT OF FACTS

Jeffrey Epstein created and controlled a complex commercial sex trafficking and abuse ring. (FAC ¶ 17). He used his enormous wealth, power, and influence to advance, carry out, and conceal his crimes. (*Id*. ¶ 21). After recruiting a young Priscilla Doe to perform massages, he proceeded to sexually abuse and traffic her for years, employing coercion, threats, physical violence, and duress. (*Id*. ¶¶ 42, 85, 105, 108, 117, 120, 135, 137, 155, 167).

Plaintiff's complaint describes the many ways she was coerced, threatened, and intimidated into silence and compliance. Epstein and the corporate defendants repeatedly reminded Doe of Epstein's power, wealth, and influence to prevent Doe from revealing the sexual abuse she endured. (*Id*. ¶¶ 21, 58, 78, 82, 89, 93, 116, 147-150, 167). Plaintiff was continually apprised of Epstein's ability to improve or destroy her life, depending on her level of cooperation. (*Id.* ¶¶ 82, 86, 89, 92, 93, 167). Doe and other victims were advised that Epstein and his associates and corporate defendants were maintaining files on her that could be used if she were ever to cooperate with law enforcement or file civil lawsuits against him or his organization. (*Id*. ¶¶ 58, 78).

Epstein threatened Doe with "serious repercussions" after she attempted to distance herself from him. (*Id.* ¶ 151). He told her that he could harm her if she did not comply with his dictates. (*Id*. ¶ 154). Epstein used physical force, placing his hands around her neck, causing her great discomfort, when she would not submit to his sexual demands. (*Id.* ¶ 120). On another occasion, Epstein woke Doe in a rage. He forcefully held her wrists and commanded her to never tell anyone, including her mother, about the commercial sex acts he was subjecting her to. (*Id.* ¶¶ 144, 146). His

threats and physical dominance, coupled with the constant reminders of his power and far-reaching influence, caused Plaintiff to fear for her life. (*Id*. ¶ 167)

Epstein manipulated Plaintiff until he controlled her financially, emotionally, and psychologically. (*Id.* ¶ 126). He intentionally took phone calls from or made calls to important people while he was sexually abusing Doe. Epstein spoke in angry and threatening tones to these important people to reinforce his power and frighten and intimidate Doe. (*Id*. ¶¶ 127-131). Epstein frequently bragged about being close friends with Bill Clinton, Donald Trump, Prince Andrew, and the Sultan of Dubai. (*Id.* ¶¶ 147-150). Everything Epstein and his co-conspirators said and did was designed to ensure that victims, including Priscilla Doe, knew that there would be consequences if they did not comply with Epstein's demands or if they reported their abuse to the authorities or the media.

Priscilla Doe reasonably believed that Epstein or his corporate associates would harm her if she disobeyed Epstein or exposed his sex trafficking operation. (*Id.* ¶¶ 131, 133, 167). Because she was sexually abused by Epstein when he was on "work release" in Palm Beach, Florida, Doe did not believe the justice system could protect her. (*Id.* ¶¶ 69, 137). Upon completion of his "work release," Epstein continued to abuse Doe. (*Id.* ¶¶ 138-140). When she attempted to distance herself once again, Epstein was further enraged. (*Id.* ¶¶ 138-139). Epstein somehow immediately knew when Doe left New York for Montreal and intermittently "surprised" Doe at various locations, causing Doe to believe she was under constant surveillance and Epstein was stalking her. (*Id.* ¶¶ 139, 142).

Priscilla Doe was interviewed by the United States Attorney General Office for the Southern District of New York as part of its criminal investigation into Jeffery Epstein. (*Id.* ¶ 40) After decades of escaping appropriate punishment for his despicable crimes against countless

young women, Epstein was indicted in July 2019 for one count of sex trafficking conspiracy and one count of sex trafficking. (*Id.* ¶ 32). The Indictment focused on Epstein's recruitment of victims to his New York and Palm Beach mansions to provide massages that quickly escalated to sexual abuse. (*Id.* ¶ 38). The Indictment described how Epstein targeted and groomed victims who "were, for various reasons, particularly vulnerable to exploitation." (*Id.* ¶ 36) The Indictment's descriptions and allegations mirrored Doe's abuse.

Jeffrey Epstein was arrested on July 8, 2019. (*Id.* ¶ 33). Two months later, he was found dead in his jail cell. (*Id.* ¶ 5). Because the government considered Doe a victim, she received notice that the Government was seeking a dismissal of the Indictment. Doe was even invited to, and did, address the Court during the dismissal hearing.[1] The Indictment was then dismissed on August 29, 2019. (*Id.* ¶ 14).

 It was not until Epstein was arrested in New York, prompting an intensely critical scrutiny of his lenient treatment in Palm Beach, Florida, and a national outrage, that Doe felt safe to come forward. She filed her initial complaint ten days after Epstein died and her first amended complaint on June 11, 2021. (DE 1, 85)

## III.   ARGUMENT

Defendants' motion for partial dismissal should be denied.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] The Government is obligated by the Crime Victims' Rights Act (CVRA) to provide notice to and confer with "victims" of federal crimes.  *See* 18 U.S.C. § 3771(a).  In view of Doe's factual allegation that she is a "victim" of the broad conspiracy charged in the federal indictment, this Court should proceed on that basis.

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Sabol v. Bayer Healthcare Pharm., Inc.,* 439 F.Supp.3d 131, 141 (S.D.N.Y. 2020). The Court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Kashef v. BNP Paribas S.A.*, 925 F. 3d 53,58 (2d Cir. 2019). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

Drawing all reasonable inferences in Plaintiff's favor, Defendants have failed to meet their burden of proving Plaintiff's claims for battery (count I), battery/violation of section 130 (count II) and intentional infliction of emotional distress (count III) are untimely.

**A. Doe's Tort Claims Against Epstein (Counts I – III) Are Not Time-Barred.**

Defendants argue that counts I-III are time-barred. This Court should reject the Defendants' argument, as Doe's claims are timely under CPLR § 215 (8)(a).  CPLR § 215 (8)(a) enlarges the otherwise-applicable statute of limitations for actions against criminal defendants. Plaintiff's claims fall squarely within § 215 (8)(a), which permits the filing of her complaint within a year of the dismissal of Epstein's Indictment. That provision states:

> Whenever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim . . . arises, the plaintiff shall have at least one year from the termination of the criminal action . . . in which to commence the civil action.

*Id*. Section 215 (8)(a)'s one-year limitation period has three requirements: "(1) a criminal action has been commenced, (2) against the same defendant, and (3) concerning the same event or transaction from which the civil action arose." *Clemons v. Nealson*, 202 A.D. 2d 747, 749 (3d Dept. 1994). Here, all three requirements are met. Because Plaintiff filed her complaint within one year of the termination of the criminal prosecution against Epstein, her claims are timely.

Defendants argue that Plaintiff's claims are outside the scope of the Indictment and therefore CPLR § 215 (8)(a) does not apply. Defendants claim that the Indictment was limited to conduct between 2002 and 2005,[2] and that the Indictment targeted some other, separate sex trafficking operation that only involved underage girls. [DE 89 at 2] ("The Indictment also only refers to minors, and Plaintiff alleges she was an adult when she met Epstein.") Defendants mischaracterize § 215(8)(a), the applicable case law, Plaintiff's Complaint, and, most egregiously, the vast sex-trafficking operation that the Indictment targeted.

**1.  The Indictment Was Not Restricted to Minors.**

As an initial matter, the Indictment covered the crimes Defendants committed against Plaintiff, notwithstanding the fact that she was an adult when she was sexually abused and trafficking by Epstein. Defendants seek to minimize the scope of the abuse alleged in the Indictment by focusing on its reference to "minors." (DE 89 at 6). Defendants ignore the nature of the vast and sophisticated operation alleged in the Indictment. Epstein's pattern and practice was to recruit and traffic young females with vulnerabilities that he knew he could exploit, and the Indictment spells out that pattern in detail. Whether the victim was a minor was not the deciding factor as to whether a female was a victim of the sex trafficking operation or experienced the precise patterns of recruitment and abuse described in the Indictment. The fact that many of the victims were minors does not mean that non-minors were not victimized by Epstein's sophisticated sex trafficking operation or that they were unimportant to the point of rendering them non-victims

---

[2] Defendants cites Judge Ramos' order in *Lisa Doe v. Indyke*, 465 F. Supp. 452 (S.D.N.Y. 2020) as authority for dismissal. (DE 89 at page 2, 6-7) Judge Ramos ruled that actions between 2006 and 2010 were outside the scope of the Indictment and thus time-barred. *Id.* at 462. Plaintiff respectfully disagrees. Importantly, Judge Ramos' ruling is not binding on this Court.  "[A] decision of federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case*." Camreta v. Greene*, 563 U.S. 692, 708, note 7 (2011); *Daubert v. NRA Group, LLC*, 861 F. 3d 382, 395 (3d Cir. 2017).

for the purposes of § 215(8)(a) protection. Indeed, the Indictment states that "many" but not "all" of Epstein's victims were minors, demonstrating that prosecutors were investigating Epstein's crimes against young women over the age of 18 as well. (The Indictment is an exhibit to Doe's initial complaint. *See* DE 1-2) (DE 1-2 ¶ 11) ("[Epstein] knew that many of his New York victims were underage."); (DE 1-2 ¶ 17) ("JEFFREY EPSTEIN, the defendant, knew that certain of his victims were underage . . . ."). The FBI confirmed this understanding of the Indictment's scope in a press release issued two days after Epstein's arrest, stating to Epstein's victims: "We want to hear from you, regardless of the age you are now, or *whatever age you were then*, no matter where the incident took place." https://www.justice.gov/usao-sdny/pr/jeffrey-epstein-charged-manhattan-federal-court-sex-trafficking-minors (last visited July 18, 2021) (emphasis added).

The fact that Plaintiff was 20 when she was recruited into Epstein's sex trafficking scheme does not negate that Plaintiff's civil claims arise from the acts described in the Indictment. Plaintiff therefore had one year from August 29, 2019, the date on which Judge Berman formally dismissed the Indictment, to file her complaint. Having filed suit on August 20, 2019, her claims fall well within the limitations period.

To the extent Defendants suggest that Epstein's crimes are not part of the same occurrence or event as those described in the Indictment because they began in 2006, their argument similarly fails. The Indictment itself notes that Epstein's sex trafficking conspiracy "up to and including in or about 2005." (DE 1-2 ¶ 2). It is now apparent that Epstein's conspiracy lasted much longer.

## 2. Plaintiff's Claims Concern the Same Sex Trafficking Operation that the Indictment Concerned.

Even if the Indictment for some reason was limited to Epstein's trafficking of minors (to the exclusion of other victims), Plaintiff's claims would nonetheless arise from the same "event or occurrence" for the purposes of § 215 (8)(a). *See, e.g., Kashef*, 925 F.3d at 62 (noting that "a New

York appellate court explicitly rejected the theory that the tolling provisions of CPLR 215(8) are exclusively for the benefit of the victims of the crime charged in the criminal proceeding" (internal quotation marks omitted)). This Court should not construe the Indictment narrowly where the Indictment itself describes a pattern of abuse against numerous victims spanning a number of years. Epstein repeated the same patterns of recruitment and abuse time and time again on countless young females, including Plaintiff. *See*, *e.g.*, DE 1-2 ¶ 7 (explaining that Epstein "perpetuated [the] abuse in similar ways" against victims). The Indictment was therefore not limited to neatly categorized events that happened on specified dates—it covered a sprawling sex trafficking operation that occurred "over the course of many years" and affected an unspecified number of victims. (*Id*. ¶ 1).

Defendants' contention that the Indictment "does not involve a criminal action arising out of the same event or occurrence as the conduct alleged in the First Amended Complaint" is incorrect. (DE 89 at 6) The sex trafficking operation that the Indictment described is precisely the same sex trafficking operation that Plaintiff was lured into—the First Amended Complaint's allegations as to the perpetrator, the locations, and the repeated sexual assaults all match the pattern described in the Indictment. Just as the Indictment alleged that Epstein began his abuse by enticing the victims to perform a massage on Epstein, (DE 1-2 ¶¶ 9, 15), recruiters initially invited Plaintiff to Epstein's home to give him a massage. (FAC. ¶¶ 97-105) The Indictment alleges that Epstein would escalate the nature and scope of physical contact during the massages to include sex acts, (DE 1-2 ¶¶ 9, 15), and Epstein escalated the nature and scope of Plaintiff's massages to include sex acts. (FAC ¶¶ 105-108) The Indictment alleges that Epstein used sex toys on victims during massages, (DE 1-2 ¶¶ 9, 15), and Epstein repeatedly used sex toys on Plaintiff during massages. (FAC ¶¶ 105, 162). And, finally, just as Epstein's associates would call victims by phone to arrange

for them to return for additional sexual encounters, (DE 1-2 ¶ 11), Epstein's associates called Plaintiff frequently to schedule more sexual massages. (FAC ¶¶ 102, 113-116, 118, 137, 156). The conduct alleged in the Indictment is precisely the conduct alleged in the First Amended Complaint.

### 3. Defendants' Attempts to Narrow the Scope of CPLR § 215 (8)(a) Fail.

Defendants advance a strained interpretation of § 215 (8)(a)'s "event or occurrence" requirement, asserting that the allegations contained in the Indictment arose from "different" events or occurrences. (DE 89 at 6). However, there was only one sex trafficking conspiracy that victimized countless young women.

The cases Defendants cite in support for their limited event or occurrence argument are inapposite. In *Christodoulou v. Terdeman*, 262 A.D.2d 595, 595 (2d Dept. 1999), the Second Department held that § 215 (8)(a) "applies only to those claims which are based on events of February 26, 1993 and December 28, 1993, because it was only in connection with events of these two days that criminal prosecution was commenced against defendant." Similarly, in *Gallina v. Thatcher*, No. 2017-52980, 2018 N.Y. Misc. LEXIS 8435, at *3–4 (Sup. Ct. Oct. 23, 2018), the court held that the plaintiff could not rely on § 215 (8)(a) to file a civil suit for assault and battery that occurred over the course of two years because the indictment "charged [the defendant] for incidents occurring on three (3) specific dates."

*Christodoulou* and *Gallina* are both readily distinguishable from Plaintiff's case. The criminal actions in *Christodoulou* and *Gallina* focused on events that occurred on specified dates (two dates in *Christodoulou* and three dates in *Gallina*), and both *Christodoulou* and *Gallina* explicitly recognized that the relevant criminal prosecutions were commenced "only in connection with the events of these [specific] days." *See Christodoulou*, 262 A.D.2d at 596; *Gallina*, 2018 N.Y. Misc. LEXIS 8435, at 3–4. By contrast, Epstein's Indictment was not limited to a specific

day or discrete event. Rather, the Indictment covered sexual abuse and a pattern of conduct that occurred "over the course of many years." (DE 1-2 ¶¶ 1–2, 8, 20, 24). Further, the Indictment charged Epstein with conspiracy and a broad sex trafficking scheme, while the criminal actions in *Christodoulou* and *Gallina* charged the defendants with crimes stemming from isolated incidents.[3]

In contrast, the Second Circuit's opinion in *Kashef* controls and demonstrates why Plaintiff's claims fall within § 215 (8)(a) here. In *Kashef*, BNP Paribas ("BNPP") entered a guilty plea conceding "knowledge of the atrocities being committed in Sudan and of the consequences of providing Sudan access to U.S. financial markets." *Kashef*, 925 F.3d at 56. The plaintiffs, Sudanese victims of mass rape, torture, deliberate infection with HIV, and other atrocities, filed a complaint against BNPP within a year of the judgment of conviction, contending that their claims were timely under CPLR § 215(8)(a) *Id.* at 57, 62–63. Like Defendants' argument here, BNPP argued that § 215(8)(a) did not apply because the plaintiffs "played no role in the proceedings surrounding BNP Paribas's plea agreement," the criminal action "required no investigation of or briefing on any injuries sustained by Plaintiffs," and the facts in the criminal case and the civil case were not identical." Brief of Defendants-Appellees at 51–52, *Kashef v. BNP Paribas S.A.*, No. 18-1304 (2d Cir. Aug. 9, 2018), Dkt. 92.

The Second Circuit rejected BNPP's argument, and instead found that the "event or occurrence" for § 215(8) purposes was "BNPP's conspiracy with Sudan to violate U.S. sanctions" for humanitarian violations. 925 F.3d at 62–63. The Court held that the victims of those humanitarian violations could bring timely claims under § 215(8)(a). *Id.* That conspiracy, like the one here, was a broad scheme spanning many years, rather than a single event (such as an assault

---

[3] Defendants also cite *McElligott v. City of New York*, No. 15-cv-7107 (LGS), 2017 WL6210840 at *5 (S.D.N.Y. Dec. 7, 2017). That case is also inapposite because it hinged on whether the defendant in the civil suit was the same defendant charged in the criminal case.

on a specified date). Just as BNPP's conspiracy to violate sanctions was the relevant event or

occurrence in *Kashef*, Epstein's widespread sex trafficking scheme is the event or occurrence at

issue in Plaintiff's case for the purposes of applying § 215 (8)(a). Defendants have failed to meet

their burden of proving that Plaintiff's claims do not arise from the same event or occurrence as

the Indictment, and therefore that § 215(8)(a) does not apply to her claims.

## B.  Plaintiff's Claims are Timely Pursuant to CPLR § 213-c

Plaintiff's claims are also timely under CPLR § 213-c.[4] That provision allows victims of

rape or criminal sexual acts (and other delineated sexual offenses) 20 years to bring a civil action

for resulting injuries:

> Notwithstanding any other limitation set forth in this article, . . . all civil claims or
> causes of action brought by any person for physical, psychological, or other injury
> or condition suffered by such person as a result of conduct which would constitute
> rape in the first degree as defined in section 130.35 of the penal law, . . . or criminal
> sexual act in the first degree as defined in section 130.50 of the penal law, . . . may
> be brought . . . within twenty years.

CPLR § 213-c.[5] Plaintiff alleges that Epstein sexually assaulted her by forcible compulsion on

multiple occasions between 2006 and 2012. (DE 85 ¶¶ 105, 108, 117, 120, 127, 134, 135, 137,

143, 155, 161, 162, 163, 164). Those crimes occurred within 20 years of the filing of this lawsuit,

and the rapes and criminal sexual acts are crimes listed in § 213-c. Her claims are therefore timely

---

[4] CPLR § 213-c was amended on September 18, 2019 to retroactively apply to acts committed
before its effective date if the applicable statute of limitations in effect on the date of the offense
had not previously expired.  Plaintiff's complaint includes several allegations extending the
applicable statute of limitations, each of which is discussed in detail herein.

[5] "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with
another person …by forcible compulsion." N.Y Penal Law § 130.35.  "A person is guilty of
criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual
conduct with another person … by forcible compulsion." N.Y. Penal Law § 130.50.

under § 213-c.[6] *See Gutierrez v. Mount Sinai Health Systems, Inc.*, 188 A.D.3d 418 (1st Dept. 2020) (§ 213-c extends statute of limitations for intentional and negligent acts or omissions).

### C. Defendants Have Not Met Their Burden of Proving that Plaintiff Cannot Invoke Equitable Estoppel.

Even if the Court were to hold that CPLR § 215(8)(a) and § 213-c do not apply to Plaintiff's claims, it should hold that they are still timely under the doctrine of equitable estoppel. The FAC alleges in detail the methods of intimidation and control that Jeffrey Epstein and his co-conspirators used to deter their victims from seeking justice. Epstein went to great lengths to threaten and manipulate countless victims, including Doe. If the Court, the public, and the world has learned anything from the arrest and uncovering of details related to Jeffrey Epstein, his connections and his insidious operation, it is that he wielded extraordinary power, giving any reasonable person the clear impression that he would do anything to avoid his criminal conduct being uncovered, including instilling real fear in his victims of the consequence they would suffer if they turned on him. Plaintiff received the message, through threats and intimidation, loud and clear. Plaintiff had every reason to believe that filing this suit before Epstein's arrest in New York and the national outcry that his arrest prompted would have had severely negative (even life-threatening) consequences for her. She therefore did not act until after she knew she was safe from Epstein and his co-conspirators.

Defendants recognize that the doctrine of equitable estoppel can be successfully invoked where a defendant's conduct caused her to delay in filing suit. (DE 89 at page 9). ("The rationale

---

[6] Doe invoked CPLR § 213-c in Count II of her First Amended Complaint. (DE 85 ¶ 174). However, that provision was mistakenly omitted from delineated incorporation in Count III. Section 213-c equally applies to Doe's intentional infliction of emotional distress claim as that claim is for "psychological or other injury or condition suffered by such person as a result of conduct which would constitute rape[.]" Doe regrets the typographical error and requests this Court to allow her to amend Count III to include section 213-c.

behind this equitable doctrine is to protect the person who brings their actions after it would normally be barred because she was 'lulled' into believing she should delay[.]") But the allegations in Plaintiff's First Amended Complaint are not as gentle as those described by Defendants. Doe did not allege she was "lulled" into not filing her complaint. Instead, Doe alleged she was threatened, intimidated, and subjected to physical force.

It is well settled under New York law that "the doctrine of equitable estoppel will preclude a defendant from asserting the statute of limitations as a defense where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." *North Coast Outfitters, Ltd. v. Darling*, 134 A.D.3d 998, 999, 24 N.Y.S.3d 92, 94 (N.Y. App. Div. 2015) (internal quotations omitted) "Our courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing—a carefully concealed crime here—which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." *Gen. Stencils, Inc. v. Chiappa*, 219 N.E.2d 169, 171 (N.Y. 1966). A defendant is therefore equitably estopped from asserting a statute of limitations defense if the defendant "wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats *or other misconduct*." *Funk v. Belneftekhim*, No. 14-CV-0376 (BMC), 2019 WL 3035124, at *2 (E.D.N.Y. July 11, 2019) (citation omitted) (emphasis added).

Here, Doe alleged threats and "other misconduct" justifying her invocation of equitable estoppel. Defendants contend that Does only made conclusory, vague, and "unparticularized" allegations which are insufficient to support equitable estoppel. (DE 89 at page 10). To the contrary, assuming the truth of the allegations in Plaintiff's First Amended Complaint and drawing

all inferences in her favor, Plaintiff has sufficiently pleaded misconduct that should equitably estop Defendants from asserting a statute of limitations defense. Plaintiff was terrified of Epstein and his co-conspirators.[7] Plaintiff's complaint describes the many ways she was coerced, threatened, and intimidated into silence and compliance.

Epstein and the corporate defendants repeatedly reminded Doe of Epstein's power, wealth, and influence to prevent Doe from revealing the sexual abuse she endured. (DE 85 ¶¶ 21, 58, 78, 82, 89, 93, 116, 147-150, 167). Plaintiff was continually apprised of Epstein's ability to improve or destroy her life, depending on her level of cooperation. (*Id.* ¶¶ 82, 86, 89, 92, 93, 167). Doe and other victims were advised that Epstein and his associates and corporate defendants were maintaining files on her that could be used if she were ever to cooperate with law enforcement or civil lawsuits against him or his organization. (*Id.* ¶¶ 58, 78).

Epstein threatened Doe with "serious repercussions" after she attempted to distance herself from him. (*Id.* ¶ 151). He told her that he could harm her if she did not comply with his dictates. (*Id.* ¶ 154). Doe reasonably believed his threats given the physical force he used against her. On one occasion, Epstein placed his hands around Doe's neck, causing her great discomfort, when she would not submit to his sexual demands. (*Id.* ¶ 120). On another occasion, Epstein woke Doe in a rage. He forcefully held her wrists and commanded her to never tell anyone, including her mother, about the commercial sex acts he was subjecting her to. (*Id.* ¶ 144, 146). His threats and physical dominance, coupled with the constant reminders of his power and far-reaching influence, caused Plaintiff to fear for her life. (*Id.* ¶ 167).

---

[7] Plaintiff's continued fear of Epstein and his co-conspirators caused her to file her action using a pseudonym. *See* Memorandum of Law in Support of Plaintiff's Motion for Leave to Proceed Anonymously. ( DE 3-1 page 3).

Epstein intentionally took phone calls from or made calls to important people while he was sexually abusing Doe.  Epstein spoke in angry and threatening tones to these important people to reinforce his power and frighten and intimidate Doe. (*Id*. ¶¶ 127-131). Epstein frequently bragged about being close friends with Bill Clinton, Donald Trump, Prince Andrew, and the Sultan of Dubai. (*Id.* ¶¶ 147-150). Everything Epstein and his co-conspirators said and did was designed to ensure that victims, including Priscilla Doe, knew that there would be consequences if they did not comply with Epstein's demands or if they reported their abuse to the authorities or the media.

Priscilla Doe reasonably believed that Epstein or his corporate associates would harm her if she disobeyed Epstein or exposed his sex trafficking operation. (*Id.* ¶¶ 131, 133, 167). Because she was sexually abused by Epstein when he was on "work release" while serving a jail sentence in Palm Beach, Florida, Doe did not believe the justice system could protect her. (*Id.* ¶¶ 69, 137). Upon completion of his "work release," Epstein continued to abuse Doe. (*Id.* ¶¶ 138-140). Doe reasonably believed that Epstein was stalking her and had her under constant surveillance.  Epstein somehow immediately knew when Doe left New York for Montreal and intermittently "surprised" Doe at various locations. (*Id.* ¶¶ 139, 142) Doe's fear of Epstein and his co-conspirators was justified.

These allegations are specific and detailed.  They directly support Plaintiff's equitable estoppel argument. Epstein's manipulation contributed to Doe's silence until Epstein's New York arrest and the consequent public outrage allowed Doe and other victims to come forward.

Plaintiff's allegations are more than sufficient to allow her claims to proceed under an equitable estoppel theory at this early stage of the litigation. "[A] complaint does not need to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Childers v. New York and Presbyterian Hosp.,* 36 F.

Supp. 3d 292, 315 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Further, "[w]hether equitable estoppel applies in a given case is ultimately a question of fact." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). Courts applying New York law have therefore reserved the highly factual issue of equitable estoppel for summary judgment after discovery or for a jury. *See, e.g.*, *Gotlin v. Lederman*, No. 05-CV-1899 (ILG), 2006 WL 1154817, at *13 (E.D.N.Y. Apr. 28, 2006) ("A vast majority of the cases on equitable estoppel permit plaintiffs to defeat a motion to dismiss on the pleadings, deferring the question until some discovery can be had."). Defendants have failed to meet their burden of proving that Plaintiff can prove no set of facts demonstrating her entitlement to equitably estopping Defendants from asserting a statute of limitations defense.

### D. Defendants Have Not Met Their Burden of Proving that Plaintiff Cannot Invoke Equitable Tolling.

Plaintiff's claims are also timely under the doctrine of equitable tolling. While equitable estoppel focuses on a defendant's affirmative misconduct, equitable tolling focuses on the plaintiff and applies as a matter of fairness where the plaintiff has been "prevented in some extraordinary way from exercising [her] rights." *Flight Science, Inc. v. Cathay Pac. Airways Ltd.*, 647 F. Supp. 2d 285, 289 (S.D.N.Y. 2009) (internal quotation marks and citations omitted). In this case, Plaintiff's fear of retaliation prevented her from filing her claims prior to Epstein's arrest in New York.

Importantly, the cases relied on by Defendants do not support their conclusion that equitable tolling is inapplicable to New York state claims. *Jang Ho Choi v. Beautri Reality Corp.*, 134 A.D. 3d 451 (1st Dept. 2016), and *Ari v. Cohen,* 107 A.D. 3d 516 (1st Dept. 2013), both rely on *Shared Communications Servs of EST, Inc. v. Goldman, Sachs & Co.*, 38 A.D. 3d 325 (1st Dept. 2007). However, a closer reading of *Shared Communications*

refutes Defendants' argument. Although acknowledging that equitable tolling is generally applied to federal claims, the *Shared Communications* Court did in fact evaluate whether the plaintiff proved equitable tolling in the state claim. The court concluded that the plaintiff "has not shown that it was actively mislead by defendant, or that in some extraordinary way had been prevented from complying with the limitations period." *Id.*

In addition, Defendants' contention that equitable tolling is not available for state causes of actions in New York ignores cases wherein courts have treated equitable tolling as a question of fact. In *Guobadia v. Irowa*, 103 F. Supp. 3d 325, 341 (E.D.N.Y. 2015), the district court denied summary judgement of a New York state assault and battery claim. The court found "genuine issues of material fact with regard to whether the Defendants' alleged coercive and abusive treatment of the Plaintiff caused her to refrain from timely raising a civil assault and battery claim against them." The court held that the issue of equitable tolling "is a question appropriately reserved for a jury determination." *Id.* In *Flight Science*, the district court also denied summary judgement on state claims and ruled equitable tolling was a jury question. *Flight Science*, 674 F. Supp. 2d 285, 289-290.

Here, as set forth above, Doe has alleged sufficient facts that establish the extraordinary means Epstein and his co-conspirators used to prevent Doe from filing her lawsuit. A "reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant." *Davis v. Jackson*, No. 15-cv-5359, 2016 WL 5720811, at *11 (S.D.N.Y. Sept. 30, 2016). The *Davis* court's reasoning also applies in this context. The court reasoned that fear of retaliation could support equitable tolling in the prison context because "sustained control tends to result in adverse psychological effects

that invariably have behavioral consequences" such as, among other things, "interpersonal distrust and suspicion of threat or personal risk; . . . diminished sense of self-worth and personal value; and posttraumatic stress reactions to the pains of imprisonment. Retaliation and fear of retaliation are natural consequences of this unique psychological environment." *Id.* at \*10 (internal quotation marks omitted).

Epstein's pattern of controlling, manipulating, and intimidating his victims caused similar psychological effects in his countless victims, including Doe, which in turn caused severe fear of retaliation. Doe alleges Epstein manipulated her until he controlled her financially, emotionally, and psychologically. (DE 85. ¶ 126). She further alleged the use of physical force, constant surveillance, stalking and persistent reminders of Epstein's power by him and his associates. These allegations support Doe's reasonable belief that Epstein or his corporate associates would harm her if she disobeyed Epstein or exposed his sex trafficking operation. Doe's fear of retaliation in no less justified than that of the prisoner in *Davis*. Epstein's abuse and manipulation equitably tolled the applicable statutes of limitations.

As with equitable estoppel, "when plaintiffs raise an equitable tolling argument, a court must deny a motion to dismiss based on the statute of limitations unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). Plaintiff's allegations are sufficient to defeat a motion to dismiss and to proceed to discovery on the issue of equitable tolling. *See, e.g., Brown v. Parkchester South Condos.*, 287 F.3d 58, 60–61 (2d Cir. 2002) (evidentiary hearing appropriate to determine whether limitations period was equitably tolled); *Childers*, 36 F. Supp. 3d at 315 (holding that plaintiff did not need to plead facts establishing right

to equitable tolling). Defendants have failed to meet their burden of proving that Plaintiff can prove no set of facts demonstrating entitlement to equitable tolling in this case.

**E.  Doe Requests Leave to Amend to Correct any Deficiencies.**

If the Court finds that any of Doe's allegations are insufficient, she respectfully requests that Court exercise its discretion to grant her leave to amend her complaint to correct any deficiencies.  To ensure that her claims are fully considered on the merits, this Court should permit her to respond to any clarification in the applicable legal principles this Court may provide. Under Fed. R. Civ. P. 15(2), the Court is empowered to grant leave to amend and "[t]he Court should freely give leave when justice so requires." If any her claims are somehow technically deficient, justice would require that her claims that she is the victim of a powerful sex trafficking conspiracy be decided on their merits and thus that she be provided with an opportunity to amend her complaint.

**IV.   CONCLUSION**

For all of the foregoing reasons, Defendants' motion to dismiss (DE 89) should be denied in its entirety.

Dated:  July 30, 2021.

Respectfully Submitted,

EDWARDS POTTINGER, LLC
*/s/ Bradley J. Edwards*
Bradley J. Edwards
Brittany N. Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
(954)-524-2820
Fax: (954)-524-2822
Email: ecf@epllc.com
brad@epllc.com; brittany@epllc.com

(*PRO HAC VICE*)

19